**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

RIVERA-AVILÉS, *et al.*,

      **Plaintiffs,**

         v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

      **Defendants.**

**CIVIL NO.** 12-1063 (JAG)

**OPINION AND ORDER**

GARCÍA-GREGORY, D.J.

Pending before the Court is Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Docket No. 18). For the reasons that follow, Defendants' motion is hereby GRANTED.

**BACKGROUND**

On January 31, 2012, plaintiffs Rubén Rivera-Avilés, Roberto A. Fajardo-Bengoa, Samuel Rodríguez-Valle, Rafael Centeno-Cruz, Rafael Mattei-Sánchez, Francisco J. Pérez, Gladys Rodríguez-García, Marisol Pagán, Pedro E. Pérez-Cuadrado, and Yvonne M. Schon (collectively "Plaintiffs"), brought suit against the Department of Justice (the "DOJ"), the Drug Enforcement Administration (the "DEA"), Eric Holder, as head of

the DOJ, Michele Leonhart, DEA Administrator, and  Pedro J.
Janer, Acting Special Agent in charge of the DEA Caribbean
Division Office (collectively "Defendants"). Plaintiffs, Puerto
Rican special agents[1] with the Caribbean Division of the DEA,
allege that Defendants discriminated against them on the basis
of their national origin by (1) failing to give them
recruitment, relocation, or retention incentives, while every
non-Puerto Rican special agent receives some type of incentive,
(Docket No. 13 ¶¶ 4.21-4.22); (2) requiring Plaintiffs or
reassigning them to work in the streets as undercover agents,
whereas non-Puerto Rican special agents are given more
comfortable desk jobs, (Id. ¶¶ 4.35-4.36); and (3) denying
Plaintiffs the possibility to transfer, (Id. ¶ 4.27).

On March 28, 2013, the Court issued an Opinion and Order
denying without prejudice Defendants' Motion to Dismiss, (Docket
No. 18). (Docket No. 34). Recognizing the likely applicability
of the Civil Service Reform Act (the "CSRA" or the "Act") to
this case, the Court ordered the parties to file supplemental
briefs addressing the question whether Plaintiffs were precluded
from bringing their claims outside of the CSRA's scheme. (Id. at

---

[1]  Plaintiff Samuel Rodríguez is a telecommunications
specialist also with the Caribbean Division of the DEA. (Docket
No. 18-1 at 1).

11-12). Plaintiffs and Defendants filed their briefs as per the Court's instructions. (<u>See</u> Docket Nos. 35 & 38).

In their Supplemental Brief, Plaintiffs maintain that the failure to pay recruitment, relocation, or retention bonuses is an employment decision not cognizable under the CSRA. (Docket No. 35 at 6-7). After compiling an extensive list of employment decisions covered by the Act, Plaintiffs cite to HR Order-DOJ 1200.1: PART 3, LABOR/EMPLOYEE RELATIONS, Chapter 3-2, Agency Grievance Procedure (July 12, 2000), to support their contention. (<u>Id.</u>). Nevertheless, Plaintiffs misinterpret the DOJ's HR Order, which states that the *chapter* excludes from coverage "[t]he payment of, failure to pay, or the amount of a recruitment bonus, a relocation bonus, a retention allowance, or a supervisory differential under 5 C.F.R. § 575" among other matters. In effect, Plaintiffs sole legal basis for the proposition that their claims are not cognizable under the CSRA's scheme is an HR Order of the DOJ which, by its own terms, does not apply to the situation at hand.

Defendants' Supplemental Brief, in turn, puts forth that Title VII is the only avenue for judicial review available to Plaintiffs. (Docket No. 38 at 11). According to Defendants, the CSRA left the Title VII remedial scheme intact, reflecting "Congress['] inten[t] that claims of employment discrimination

in federal employment would continue to be vindicated through Title VII." (Id. at 7). Having "failed to avail themselves of their exclusive remedy," Defendants maintain that Plaintiffs "are barred from pursuing constitutional claims arising out of their federal employment directly in this Court." (Id. at 11-12). Defendants recognize, however, that the CSRA provides "an additional administrative process" for the vindication of employment discrimination in the federal workplace. (Id. at 8).[2]

The Court concurs with Defendants. Plaintiffs are precluded from bringing their federal employment claims directly in this Court, as they fall within the scheme of the CSRA and they failed to satisfy the Act's exhaustion requirement. As the Supreme Court concluded in Elgin v. Department of Treasury, the CSRA provides the exclusive avenue to review even here, where Plaintiffs claims are constitutional claims for equitable relief. 132 S. Ct. 2126, 2132 (2012).[3]

---

[2] As Defendants correctly state, (Docket No. 38 at 8), the CSRA authorizes the Office of Special Counsel (the "OSC") to investigate a federal employee's allegations of prohibited personnel practices, discussed below. See 5 U.S.C. § 1214(a). The Merit Systems Protection Board (the "MSPB" or the "Board") can then order corrective action if it deems it appropriate. Id. § 1214(b). Final orders or decisions of the Board are subject to judicial review. Id. § 1214(c).

[3] The Court need not address Defendants' contention that the CSRA directs Plaintiffs' claims to Title VII, as Title VII also contains an administrative exhaustion requirement that they failed to meet. We likewise need not inquire whether the claims

CIVIL NO. 12-1063 (JAG)                                         5

STANDARD OF LAW

MTD.

DISCUSSION

The CSRA is a comprehensive system for reviewing employment actions taken against federal employees. <u>Elgin</u>, 132 S. Ct. at 2130. The Supreme Court emphasized in <u>Elgin</u> that the Act was designed to reduce the potential for inconsistent decision-making and duplicative judicial review that resulted from not having an integrated scheme for reviewing federal-employee grievances. <u>Id.</u> at 2135; <u>see also</u> <u>Elias v. Dep't of Def.</u>, 114 F.3d 1164, 1167 (Fed. Cir. 1997) ("[T]he general statutory scheme of the CSRA is premised on the objectivity and nation-wide consistency of the Board as a centralized overseer of federal employment law."). As in <u>Elgin</u>, the purpose of the CSRA is a significant principle underlying our analysis in the present case.

The CSRA's applicability turns on the type of federal employee and the challenged employment action. <u>Elgin</u>, 132 S. Ct. at 2134. It is here undisputed that Plaintiffs are federal employees falling within the Act's coverage. (Docket No. 29 at 12). Therefore, we must focus our attention on the question

---

are separately actionable through Title VII, given that the case
fails when viewed through the lens of the CSRA.

whether the complained conduct constitutes covered employment actions under the CSRA.

The D.C. Court of Appeals explained that the CSRA establishes the following three-level review scheme depending on the severity of the employment action:

> (1) for major personnel actions specified in the statute ("adverse actions"), [the Act provides for] direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), [it provides for] review by the Office of Special Counsel, with judicial scrutiny limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry; and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, [the CSRA provides for] review by neither OSC nor the courts.

Carducci v. Regan, 714 F.2d 171, 175 (1983) (internal citation and quotation marks omitted). Although we do not believe that Defendants' employment decisions constitute adverse actions, we hold that the complained conduct falls within Carducci's second category—that is, Plaintiffs have alleged that Defendants committed prohibited personnel practices.

### 1.  Adverse Action

Defendants' failure to give Plaintiffs recruitment, relocation, or retention incentives does not rise to the level of adverse action. Under 5 U.S.C. § 7512, adverse actions only

include removals, suspensions for more than 14 days, reductions in grade or pay, and furloughs of 30 days or less. Pay is defined as "the rate of *basic pay* fixed by law or administrative action for the position held by [the] employee." <u>Pann v. Dep't of Navy</u>, 265 F.3d 1346, 1348 (Fed. Cir. 2001) (emphasis supplied) (citing 5 U.S.C. § 7511(a)(4)). In turn, basic pay refers to "the rate of pay fixed for the position held by the employee 'before any deductions and exclusive of additional pay of any kind.'" <u>Id.</u> (citing 5 C.F.R. § 5.31.202). Additional pay "includes items such as availability pay, overtime pay, or premium pay, which are not regarded as part of an employee's 'basic pay' . . . ." <u>Id.</u> The Code of Federal Regulations establishes that the incentives here at issue are to be calculated as a percentage of the employee's basic pay. <u>See</u> 5 C.F.R. § 575.109 ("[T]he total amount of recruitment incentive payments paid to an employee in a service period may not exceed 25 percent of the annual rate of basic pay of the employee . . . ."); 5 C.F.R. § 575.209 ("[T]he total amount of relocation incentive payments paid to an employee in a service period may not exceed 25 percent of the annual rate of basic pay of the employee . . . ."); 5 C.F.R. § 575.309 ("An agency must establish a single retention incentive rate for each individual or group of employees that is expressed as a percentage of the employee's rate of basic pay."). Therefore, recruitment,

relocation, and retention incentives cannot be considered part of Plaintiffs' basic pay. Defendants' failure to give Plaintiffs these incentives is not a pay reduction under the Act, and thus cannot qualify as an adverse action.

As to Defendants' practice of requiring or reassigning Plaintiffs to work as undercover agents and denying their requests for transfers, it is plain that these employment decisions do not constitute adverse actions—namely, removals, suspensions for more than 14 days, reductions in grade or pay, or furloughs of 30 days or less—under the CSRA. 5 U.S.C. § 7512.

**2.   Prohibited Personnel Practices**

As explained in Carducci, the CSRA also covers prohibited personnel practices—that is, "specified minor personnel actions infected by particularly heinous motivations or disregard of law." 714 F.2d at 175. Respecting these prohibited personnel practices, the Act provides for review by the OSC, "with judicial scrutiny limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry." Id. Therefore, we must determine whether the complained conduct can be considered a prohibited personnel practice. We answer this question affirmatively.

Section 2302(a)(2)(A) of the CSRA specifies the personnel actions that can qualify as prohibited personnel practices where

"infected by particularly heinous motivations or disregard of law." 714 F.2d at 175. These include appointments, promotions, transfers, reinstatements, as well as "decision[s] concerning pay, benefits, or awards," among other employment decisions. Id. § 2302(a)(2)(A). We shall first address Plaintiffs' main claim—Defendants' failure to pay them recruitment, relocation, or retention incentives. Accordingly, the category of "decision[s] concerning pay, benefits, or awards" is the one relevant to the coming analysis.

There is little case law on what exactly constitutes "a decision concerning pay, benefits, or awards" under 5 U.S.C. § 2302(a)(2)(A)(ix). In Smith v. Department of Agriculture, the MSPB held without much explanation that withholding a within-grade raise constitutes a decision concerning pay. 64 M.S.P.R. 46, 65 (Aug. 3, 1994). Similarly, in DiGiorgio v. Department of Navy, the MSPB determined that that the denial of opportunities to earn overtime pay is a decision concerning pay. 84 M.S.P.R. 6, 14 (Sept. 15, 1999). Finally, in Roach v. Department of Army, the Board held that the garnishment of an employee's salary to recover a sum of money that the agency erroneously awarded to that employee is a decision "concern[ing] both pay and an award." 82 M.S.P.R. 464, 470 (June 11, 1999).

Despite the paucity of precedent on the matter, the CSRA's merit system principles as well as the Act's purpose counsel in favor of adopting a broad interpretation of 5 U.S.C. § 2302(a)(2)(A)(ix). Section 2301 of the CSRA provides that personnel management should take into account the following, among other general guidelines: "[a]ll employees and applicants for employment should receive *fair and equitable treatment* in *all* aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(2) (emphasis supplied). Moreover, the section provides that "[e]qual pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance." Id. § 2301(b)(3). In light of these principles, the D.C. Court of Appeals recognized that Congress intended to give the OSC and the MSPB extensive jurisdiction over a wide variety of personnel actions. Carducci, 714 F.2d at 175. ("With such broad bases for seeking the assistance of OSC, we have little fear that Congress has inadvertently created a significant field in which the employing agency itself has the last word."); see also Roth v. United States, 952 F.2d 611, 614

(1st Cir. 1991) ("The CSRA was meant to provide a comprehensive framework for personnel policies governing federal employees."). This, coupled with "[t]he CSRA's [objective of creating an] integrated scheme of administrative and judicial review for aggrieved federal employees," Elgin, 132 S. Ct at 2135, leads this Court to conclude that the category of reviewable personnel actions should be read expansively. Thus, we hold that Defendants' failure to give Plaintiffs recruitment, relocation, or retention incentives constitutes "a decision concerning pay, benefits, or awards" pursuant to 5 U.S.C. § 2302(a)(2)(A)(ix).

The Court's analysis is also applicable to Plaintiffs' remaining allegations that Defendants require them or reassign them to work as undercover agents and deny their requests for transfers. These employment decisions likewise fall within the definition of personnel action, particularly in light of the merit system principles and the CSRA's purpose. See 5 U.S.C. § 2302(a)(2)(A) (including within the definition of personnel action "any [] significant change in duties, responsibilities, or working conditions" as well as "detail[s], transfer[s], or reassignment[s]").

For there to be a prohibited personnel practice, the personnel action at issue must be "infected by particularly heinous motivations or disregard of law." Carducci, 714 F.2d at

175. One such heinous motivation is discrimination on account of national origin. 5 U.S.C. § 2302(b)(1)(A).[4] Plaintiffs have sufficiently alleged that Defendants' employment decisions are tied to Plaintiffs' national origin. According to the Amended Complaint, 18 of the 68 special agents in the Caribbean Division of the DEA are Puerto Rican. (Docket No. 13 ¶ 4.21). These agents do not receive any form of incentive. (Id.). On the other hand, the remaining 50 special agents, who are not from Puerto Rico, all receive some form of incentive. (Id.). Additionally, Plaintiffs allege that Defendants' require them or reassign them to work as undercover agents while non-Puerto Rican special agents are given more comfortable desk jobs. (Id. ¶¶ 4.35-4.36). Finally, Plaintiffs contend that they, "local hires," are routinely denied their requests for transfers. (Id. ¶¶ 4.27, 4.38). Taking these allegations as true, we hold that Plaintiffs' Amended Complaint states a claim of prohibited personnel practices under the CSRA.

---

[4] Section 2302(b) states, in relevant part:
    Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--
    (1) discriminate for or against any employee or applicant for employment--
    (A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 . . . .

### 3.   Exhaustion

The D.C. Court of Appeals explained in Carducci that, where a federal employee alleges a prohibited personnel practice, the CSRA provides for review by the OSC, "with judicial scrutiny limited, at most, to insuring compliance with the statutory *requirement* that the OSC perform an adequate inquiry." 714 F.2d at 175 (emphasis supplied) (internal citation and quotation marks omitted). Indeed, the CSRA requires that federal employees exhaust the administrative remedies provided therein as a jurisdictional prerequisite to suit. See, e.g., Irizarry v. United States, 427 F.3d 76, 78 (1st Cir. 2005) (affirming dismissal of a federal employee's action seeking review of a transfer motivated by political animus on the ground that he failed to first exhaust administrative remedies provided by CSRA). Requiring exhaustion of administrative remedies "serves important purposes . . . [such as] protect[ing] agency authority and promot[ing] judicial efficiency." Id. at 79. Moreover, it "prevents litigants from bypassing Congress' carefully crafted remedial scheme." Id. Plaintiffs in this case failed to allege that they sought review of any of Defendants' employment decisions with the OSC. In fact, the Amended Complaint is completely devoid of allegations that Plaintiffs attempted to take advantage of any sort of administrative procedure prior to bringing suit in this Court. Having failed to satisfy the CSRA's

exhaustion requirement, Plaintiffs' claims must be dismissed for lack of jurisdiction.

### 4.   First Amendment Retaliation

The Amended Complaint sets forth one final claim. According to Plaintiffs, after the filing of the instant suit Defendants retaliated against Plaintiffs by assigning them to work as counselors for the basic agent class in Quantico, an assignment which "places a heavy burden on agents" and is "historically seen . . . as a method of punishment by management." (Docket No. 13 ¶¶ 4.42-4.47). Plaintiffs frame this claim as a violation of their First Amendment "right to petition the government." (Id. at ¶¶ 6.1-6.2, 6.5). Nevertheless, the claim is cognizable through the CSRA, and must therefore be dismissed due to Plaintiffs' failure to satisfy the Act's exhaustion requirement.

Section 2302 provides that "tak[ing] or fail[ing] to take, or threaten[ing] to take or fail to take, any personnel action against any employee . . . because of the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation" is a prohibited personnel practice. 5 U.S.C. § 2302(b)(9)(A). Defendants' decision to reassign Plaintiffs is a personnel action under the CSRA. See id. § 2302(a)(2)(A) (including within the definition of personnel action "any [] significant change in duties, responsibilities, or working

**CIVIL NO.** 12-1063 (JAG)                                                      15

conditions" as well as "detail[s], transfer[s], or reassignment[s]"). The filing of this complaint falls plainly within the meaning of 5 U.S.C. § 2302(b)(9)(A). Therefore, Plaintiffs have sufficiently alleged that Defendants took a prohibited personnel practice against them, a claim which must be addressed within the CSRA's scheme. Nevertheless, Plaintiffs did not allege that they sought review of Defendants' retaliatory employment decisions with the OSC. Having failed to satisfy the CSRA's exhaustion requirement, Plaintiffs' claim must be dismissed for lack of jurisdiction.

**CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss, (Docket No. 18), is hereby GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of September, 2013.

<u>S/ Jay A. García-Gregory</u>
JAY A. GARCÍA-GREGORY
United States District Judge
